(113 N. W. 1071.)

---

JAMES T. MORRISON v. P. P. LEE.

Opinion filed Nov. 15, 1907.

**Contributory Negligence.**

1. Defendant sold to plaintiff a gallon of kerosene, with knowledge of the fact that one-ninth part thereof was gasoline. Plaintiff, with knowledge of the fact that a fire was burning in his stove, poured some of the contents of the mixture directly from the can into the stove, causing an explosion of the vapors in the can, which severely injured him. *Held,* assuming that the oil was standard kerosene, that plaintiff as a matter of law was guilty of negligence which proximately contributed to the injury, and hence he cannot recover.

**Same — Fact of Negligence Undisputed — Question for Court.**

2. When the facts relating to negligence or contributory negligence are not in dispute, and but one inference can reasonably be deduced therefrom, the question of negligence or contributory negligence becomes a question of law for the court.

**Same — Due Care.**

3. The standard from which to determine the question as to whether the plaintiff exercised such care as a reasonably prudent person would exercise under the like circumstances is the common knowledge and experience of men, and not the scientific knowledge and experience possessed by experts.

Appeal from District Court, Ward county; *Goss, J.*

Action by James T. Morrison against P. O. Lee. Judgment for plaintiff, and defendant appeals.

Reversed.

*James Johnson* and *Guy C. H. Corliss,* for appellant.

Where the negligence is violation of statutory or municipal law, proximate cause must be shown. 21 Am. &. Eng. Enc. Law, 480; 1 Sher. & Redf. Neg. 27; 1 Thompson on Negligence, 210.

Negligence must be sole cause of injury. Elliott v. Allegheny, etc., Co., 54 Atl. 278; Afflick v. Bates, 43 Atl. 539; The Saratoga 36 C. C. A. 208; Loftus v. Dehail, 65 Pac. 379; Rider v. Syracuse, etc., Co., 63 N. E. 836; Thompson on Negligence, 145; France v. Head, 42 S. W. 913; Laidlaw v. Sage, 52 N. E. 679; Louisville Gas. Co. v. Kaufman, 48 S. W. 434.

When, between defendant's act and plaintiff's injury, a third cause intervenes, defendant's act is the remote, not direct cause of the injury. Stone v. Boston, etc., Ry. Co., 51 N. E. 1, 21 Am. & Eng. Enc. Law, 489; 1 Thompson on Negligence, 57; Sheridan v. Bigelow, 67 N. W. 732; Deisenrieter v. Kraus-Merkel Malting Co., 72 N. W. 735; Cole v. Ger. S. &. L. Soc., 124 Fed. 113; Laidlaw v. Sage, supra; Cochran v. Railway Co., 39 Atl. 296; Koch v. Fox, 75 N. Y. Supp. 913; Niles v. Ry. Co., 43 N. Y. Supp. 751; Mo. Pac. Ry. Co. v. Columbia, 69 Pac. 338; Chicago, etc., Ry. Co. v. Harton, 81 S. W. 1236; Glassey v. Worcester, etc., Co., 70 N. E. 199; Leeds v. N. Y. Tel. Co., 70 N. E. 219; Claypool v. Wigmore, 71 N. E. 509; McFarlane v. Town of Sullivan, 74 N. W. 559; Strobeck v. Bren, 101 N. W. 795; Fishburn v. Burlington & N. W. Ry. Co., 98 N. W. 380; Kingsley v. Bloomingdale, 67 N. E. 333.

*LeSueuer & Bradford (Tracy R. Bangs,* of counsel), for respondent.

The question of negligence was for the jury. Vindicator Consol Min. Co. v. Firstbrook, 86 Pac. 313; Fernadez v. Sac City Ry., 52 Cal. 45; Schubert v. Clarke, 15 L. R. A. 818; Wellington v. Downer Kerosene Oil Co., 104 Mass. 64; Fuchs v. St. Louis, 34 L. R. A. 118; Hourigan v. Nowell, 110 Mass. 470; Siemers v. Eisen, 54 Cal. 418; Ives v. Welden, 54 L. R. A. 854.

Court must assume that plaintiff is not negligent. Smith v. Chicago Ry. Co., 55 N. W. 717; Kelly v. Anderson, 87 N. W. 579.

FISK, J · On February 6, 1906, plaintiff recovered a judgment against the defendant in the district court of Ward county in the sum of $8,023 for alleged negligence in selling to plaintiff a gallon of kerosene oil containing a small quantity of gasoline, which

mixture, or, more properly speaking, the vapors formed therefrom, exploded in the can in which the same was contained while plaintiff was in the act of starting a fire, causing him serious bodily injury. The case was before this court on a former appeal, but the merits of the litigation were not considered or decided; the decision being based upon a question of practice. See Morrison v. Lee, 13 N. D. 591, 102 N. W. 223.

Plaintiff's cause of action is predicated upon the negligent and unlawful conduct of defendant in selling what plaintiff had a right to assume was standard kerosene, when the same contained a mixture of kerosene and gasoline; the evidence showing that the mixture contained eight parts of standard kerosene and one part gasoline. The defendant is clearly liable, under all the authorities, for the injury caused by the explosion, provided the proof shows that the proximate or efficient cause of such explosion was the presence of the gasoline in the oil, and that plaintiff did not by his culpable negligence directly contribute to such injuries, We therefore start with the assumption, which we think is too plain for discussion, that defendant was guilty of gross negligence as a matter of law in placing this mixture upon the market for sale to his customers, especially without acquainting them of its true character. It does not follow, however, that this negligence on defendant's part was actionable unless it affirmatively appears that it operated to cause injury to some one; and the person asserting that it did cause injury has, of course, the burden of showing such fact, Waters-Pierce, etc., Oil Co. v. Deselms (Okl.) 89 Pac. 212. Applying this rule to the case before us, the burden was upon plaintiff to establish by a fair preponderance of the evidence that this explosion and consequent injury would not have happened under the facts in this case had it not been for the presence of the gasoline in the oil. Plaintiff concedes this burden to be upon him, but he most vigorously contends that the trial court under the state of the proof, was justified in submitting this question to the jury. Even if this contention were sound, we would be unable to see how the instruction of the trial court upon this issue could be upheld. Question 28 of the special verdict embodied this issue as follows: "Would an explosion have resulted in the oil can if the oil poured by plaintiff the second time in his stove had been kerosene oil of standard test, when measured by flash test at 120 degrees Fahrenheit?" The burden was upon the plaintiff to estab-

lish the negative of this issue, but the court charged the jury with reference thereto as follows: "Before you answer question No. 28, the evidence in this case must show by a fair preponderance of the evidence that an explosion would have resulted in the oil can if the oil poured by plaintiff the second time in the stove had been kerosene oil of standard test, when measured by flash test at 120 degrees Fahrenheit. Should the evidence fail to prove by a fair preponderance thereof that said explosion would have resulted had the oil so poured the second time into this stove by plaintiff been kerosene oil of standard test, * * * then your answer to this question should be 'No,' or in the negative." This instruction was clearly erroneous. This is a question, however, not involving the merits, and, if we can do so, we deem it only justice to both parties to dispose of this appeal upon the merits, and thus end a long drawn out and necessarily expensive litigation.

Whether plaintiff's contention that there was sufficient evidence to warrant the submission of the case to the jury upon the question as to the presence of the gasoline in the oil being the proximate cause of the explosion is sound, it is unnecessary for us to determine, as we are fully convinced that plaintiff's own voluntary and reckless conduct as detailed by his own testimony stands as an insurmountable barrier to his recovery in this action; and, while we regret that defendant is to escape all liability for his gross misconduct, we consider it our plain duty, under the facts, to hold against the plaintiff. In narrating the facts immediately connected with the explosion, plaintiff testified: "I went in the shop on the morning of December 9, 1902, I think about 10 or 11 o'clock in the forenoon, and had some work to do there, so I went to the stove and opened it, and I saw some unburned coal in the stove, saw it was black, and I supposed the fire was out, so I thought if I would put some oil on this coal I could light it, and I took the oil can and started to pour oil in, and the fire flashed up and started to burn, and that surprised me and I hesitated, straightened the can up and held it back for an instant, so then I thought it was blazing. I thought it was safe, and I started to pour, and when I started the second time the can exploded. After I had opened these doors I saw there was no fire in view, so I took the can and poured some oil on it. Q. What precautions did you take besides looking into the stove to see if there was any fire there or not. A. None in particular, except the door was cold

when I took hold of it. The lower draft seemed cold. * * * I picked up the can, and started to pour the oil into the stove out of the can; poured it from the spout. The oil flowed freely from the can. There was a screw top on that can. It was loose at the time I poured the oil on the fire, so the air could flow freely in the top as the oil flowed out the spout. After I had poured in this little the first time the fire flared up, and started to burn. It burned up fairly well; a bright flame. There wasn't any explosion there that time. The flame burned up rather quick, started with a slight flash, and burned up quick. Q. And it burned up as though this oil was all taking fire and burning? A. I suppose so; yes. When I discovered this flame flashing up, I straightened the can up and stopped pouring for the present; straightened it up to an upright position, and moved it back from the opening and tipped the top back. I was still holding the bail of the can in my left hand the bottom in my right. After I hesitated an instant I started to pour again. * * * There were flames there when I poured the second time. Q. Were you not also asked the following question in that same action (meaning the former trial): 'Q. Did it seem to rise up towards the can? A. It rose towards it; yes.' A. The flames were coming up, of course." This testimony, coming as it does, from plaintiff's own lips, must be accepted as a true statement of the circumstances surrounding the injury, especially as he was the only person present at the time of the explosion. It thus appears that at the time of the explosion plaintiff was in the act of pouring this oil from the can into the stove with knowledge that there was a fire blazing therein. If the explosion had occurred while he was in the act of pouring the oil into the stove the first time, it is quite probable that, under the circumstances disclosed by the evidence, we should be obliged to hold it not error to submit the question of plaintiff's due care to the jury; but, where the facts are undisputed and but one inference can be drawn from such facts, it requires us to determine the question as a matter of law, and we feel compelled to hold that in pouring the oil into the stove the second time, knowing that a fire was burning therein, plaintiff was guilty of gross carelessness, which, at least, directly contributed to the injury, if it was not the sole proximate cause thereof.

We have been unable to find any adjudicated case, and none has been cited by counsel for respondent, which has upheld a recovery

under facts similar to the undisputed facts of this case.  Counsel for respondent have called our attention to the cases of Ellis v. Republic Oil Co. (Iowa) 110 N. W. 20 ; Waters-Pierce Oil Co. v. Deselms (Okl.) 89 Pac. 212, and Price v. Standard Life & Accident Ins. Co., 92 Minn. 238, 99 N. W. 887, as authorities in favor of their contention that the question was one for the jury, and not for the court, to decide.  None of them support respondent's theory, but, on the contrary, are in appellant's favor as we construe the opinions.  In the first case there was no witness to the explosion, and therefore not the slightest evidence was produced bearing upon the contributory negligence of the deceased, and the court very properly held that plaintiff was entitled to the usual presumption that the deceased was acting with due care prompted by the instinct of self-preservation.  There was no evidence tending to show that the deceased had poured the oil out of the can into the fire.  The verdict was sustained upon the ground that the evidence tended to show that the explosion was caused by the room becoming filled with gasoline vapors from the can so that, when a match was lighted, an explosion immediately resulted from the explosive mixture of the air and gasoline vapors in the room.  The court, after reviewing the testimony, said : "If this be true, it is quite certain that the explosion was not occasioned by oil or gasoline turned into the stove, and ignited by fire smouldering in the ashes or by a match applied to the saturated kindling, for, had it been so produced, it is hardly possible that the stove lids would not have been thrown off, or that the kindling would have been scattered .or burned.  The more natural inference would seem to be that the air of the room had in some manner become so impregnated with gas or vapor from the contents of the can that explosion followed immediately upon striking the match, and before the girl had time to reach the kindling.  In the absence of any showing or suggestion that she was in any manner responsible for the character of the contents of the oil can, or that any reason existed to excite her suspicion that the can was not filled with standard kerosene, there is certainly no showing on which we can say as a matter of law that she was guilty of contributory negligence.  The use of kerosene in kindling fires is too common and too well known for us to say that a person using reasonable care may not employ that agency without being charged with negligence.  It is said in argument that this may be true, and yet the court should hold it negli-

gent to pour oil directly from the can into a stove in which there is, or may be, fire. But it is not conceded, nor is it shown beyond question, that such was the manner of the accident. The only evidence of that nature is given by one witness who claims to repeat what the girl said in the interval between her injury and her death, three or four hours later. The story told by other witnesses, if credible, casts doubt upon this testimony, and the tendency of other proved circumstances is, as we have seen, opposed to this theory." It will be seen that there was at least a conflict in the testimony as to whether the explosion was caused by pouring the oil into the stove, and it was properly held a question for the jury to determine. It is quite apparent from a reading of the opinion that the recovery would not have been sustained had the undisputed evidence been the same as in the case at bar. In the second case cited the question of contributory negligence was disposed of on the ground that there was no evidence to show that the explosion occurred from pouring the oil on the fire, and the only evidence as to the cause of the fire negatived the idea that the explosion occurred while the oil was being poured from the can into the fire. The evidence showed that there was no fire whatever in the stove when a witness who testified on the trial left the house at 8 o'clock in the morning. Furthermore, after the fire was extinguished, the can was discovered sitting in the room with the top of the can off. This upright position of the can sitting on the floor was evidence that there was no explosion in the can. The evidence indicated that there was an explosion either in the stove from lighting the kindling after the oil had been placed thereon, or from the mixture of air and gasoline vapor in the room. There being no direct or circumstantial evidence showing that the can exploded while the oil was being poured out of it into the fire, and the circumstances indicating the contrary, the court, on the question of negligence, very properly gave the injured party the benefit of the presumption of due care prompted by the instinct of self-preservation. Price v. Standard Life Ins. Co., supra, was an action to recover under a policy of accident insurance which limited recovery to one-fifth of the face of the policy "in the event of death * * * due to unnecessary exposure to obvious risk of injury or obvious danger." The insured met his death by an explosion while kindling a fire in a stove by the use of kerosene. The defense urged that, under the above provision of the policy, only one-fifth of its face could

be recovered by the beneficiary. The trial court was asked, but refused, to charge the jury that no recovery could be had in excess of that amount; but did charge in effect to return a verdict only for such sum if the assured knew, or could have known by the exercise of reasonable diligence, that there was fire in the stove at the time he poured kerosene oil therein. This was sustained as a correct statement of law. There was a conflict in the evidence in that case as to the vital question whether the deceased at the time of pouring the oil into the stove knew, or by the exercise of reasonable diligence could have known, that there was fire therein, and for this reason it was held proper to submit the question of due care of deceased to the jury. It is apparent, that, if the evidence had been undisputed that deceased knew of the fire in the stove when he poured the kerosene therein, the court would have held as a matter of law that the recovery could not exceed one-fifth of the face of the policy. It appears, therefore, that these cases do not sustain respondent's contention in the case at bar, but, on the contrary, tend to uphold the contention of appellant.

Respondent cites, as sustaining his contention that it was a question for the jury as to whether he was in the exercise of due care, the following cases: Milling Co. v. Firstbrook (Colo.) 86 Pac. 313; Fernandes v. Sacramento City Ry., 52 Cal. 45; Schubert v. Clarke, 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 Am. St. Rep. 559; Wellington v. Downer Kerosene Oil Co., 104 Mass. 64; Fuchs v. St. Louis, 133 Mo. 168, 31 S. W. 115, 34 S. W. 508, 34 L. R. A. 118; Hourigan v. Nowell, 110 Mass. 470; Siemers v. Eisen, 54 Cal. 419; Clements v. Electric Light Co., 44 La. Ann. 692, 11 South. 151, 16 L. R. A. 43, 32 Am. St. Rep. 348; Jennie Ives v. Weldon, 114 Iowa, 476, 87 N. W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 379; Stowell v. Standard Oil Co., 139 Mich. 18, 102 N. W. 227. We have examined each of these cases, and none of them throws any light upon the question here involved. The case in 110 Mass. 470, principally relied upon, does not contain a statement as to how the explosion occurred or what the plaintiff's conduct was. In none of the cases, so far as we recollect, was the question of plaintiff's contributory negligence or the question as to whether there was sufficient evidence to require a submission of the case to the jury, involved.

But respondent relies upon the testimony of the witness Bedford, an expert chemist, as showing that an explosion would not

have taken place if it had been standard kerosene in the can, and hence concludes therefrom that plaintiff's act could not be considered negligent as a matter of law. This contention is, we think, untenable. Even if the expert testimony was admissible for any purpose, it merely tended to show that the explosion might not have happened if the oil had been standard kerosene, even though plaintiff was careless in pouring it out of the can onto a blazing fire, as he testified doing. This testimony was entitled to no probative weight as establishing that defendant's negligent act was the sole proximate cause of plaintiff's injury. With equal propriety, defendant might contend that the explosion would not have happened if plaintiff had not carelessly poured the oil from the can onto the fire, even though he, the defendant, was negligent in selling the mixture. The most that can be claimed is that the negligence of the defendant concurred with that of plaintiff in causing the injury. Without the negligence of both parties, the accident might not have happened, hence the proximate cause of the injury was the combined negligence of both parties, according to the testimony of the expert Bedford. The testimony of the experts, therefore, furnishes no light upon the vital question, which is as to whether, under the undisputed facts, plaintiff acted as a reasonably prudent person would be expected to act under the like circumstances. This question should be determined, not from the standpoint of an expert possessing scientific knowledge, but rather from the common knowledge and experience of men. Applying the well-established rule that, where there is no substantial conflict in the testimony and reasonable and fair-minded men cannot differ as to the inferences to be drawn from such testimony, it becomes a question of law for the court, it seems plain that but one conclusion can be reached, and that is that plaintiff did not act with such care as a reasonably prudent person would exercise under the like circumstances, but, on the contrary, his conduct was grossly careless and extremely reckless as compared with that of a reasonably careful and prudent person. The recent case of Riggs v. Standard Oil Co., decided by the Circucit Court of the United States for the District of Minnesota, and reported in 130 Fed. 199, is directly in point. The opinion by Lochren, J., contains a very clear, and we think, sound statement of the law upon the question here involved. As in this case, the plaintiff sought to recover damages for injuries sustained by reason of an explosion

of oil used by her in lighting a fire, she claiming that the oil was a mixture of kerosene and gasoline, although purchased for standard kerosene. The court, after reviewing the facts and after announcing the rule of law applicable to contributory negligence, held that the nature of petroleum oils of all kinds, including that of kerosene, is, as a matter of common knowledge, well known to be very dangerous when allowed to come in contact with fire, and a recovery was denied for the reason that plaintiff was injured by an explosion while attempting to kindle a fire by the use of what she supposed to be standard kerosene, she having knowledge that there were live coals of fire in the stove; the court saying: "It seems to me that I must hold as a matter of law that it is hazardous negligence to attempt to light a fire in a stove where there are either live coals or a blaze by the use of kerosene oil even of the standard required by the statute."

We have considered respondent's contention that the doctrine of contributory negligence has no proper application to the facts of this case. He contends that the defendant was guilty of a willful wrong which resulted in plaintiff's injuries. It is true that he knowingly sold this mixture, and thereby willfully violated the law of this state which, in effect, provides that kerosene oil shall not be sold until it has been tested and shown that it will not flash below 120 degrees Fahrenheit. But the complaint as amended is not framed upon the theory of a recovery for a willful injury, but the plaintiff seeks to recover on account of the defendant's negligent act in selling the oil, knowing that it contained gasoline. It is nowhere claimed that the defendant did this with the willful intent of injuring the plaintiff. Therefore the general rule that contributory negligence has no application in cases where the injury is inflicted by the willful act or omission of the defendant does not apply. As stated in 7 Am. & Eng. Enc. Law, 443: "Willfulness and negligence are the opposites of each other; the one signifying the presence of intention or purpose, the other its absence. This distinction has not always been observed. Consequently there are cases that use the terms 'gross' or 'willful' negligence to designate willful injuries. Late cases have made the distinction clear. And the principle of the responsibility of the willful wrongdoer for all the consequences of his misconduct is really an old one." We think no authorities can be found holding that contributory negligence is not a defense under the facts in this case.

For the foregoing reasons, the judgment of the district court is reversed, and that court directed to enter judgment in appellant's favor, dismissing the action. All concur.