MAGGIE PARTON, APPELLANT, v. PHILLIPS PETROLEUM COMPANY, A CORPORATION, RESPONDENT.—107 S. W. (2d) 167.

Springfield Court of Appeals. June 16, 1937.

Rehearing denied July 8, 1937.

*S. D. Flanagan* for appellant.

*Cecil L. Hunt* and *Edgar & Banta* for respondent.

FULBRIGHT, J.—This action was begun in the Circuit Court of Iron County, September 3, 1933, by Maggie Parton against Phillips Petroleum Company and Henry Janke to recover damages for injuries received by her, alleged to have been caused by the negligence of the defendants. It was claimed that the Phillips Petroleum Company negligently sold to Henry Janke, an operator of a filling station, a mixture of kerosene and gasoline for refined kerosene; and said Janke sold to plaintiff's husband a quantity of the liquid believing it to be kerosene; that the liquid had a flash point of less than 100 degrees Fahrenheit in violation of Section 13,389, Revised Statutes Missouri 1929; that plaintiff used some of the liquid in kindling a fire, believing it to be kerosene; that as she did so said liquid exploded; and that as a result of said explosion plaintiff sustained the injuries complained of. The defendant denied generally the allegations in the petition and alleged contributory negligence on the part of the plaintiff. The reply was a general denial. In the course of the trial plaintiff dismissed as to Henry Janke. From a directed verdict in favor of defendant, plaintiff appeals.

Plaintiff's assignment of error is as follows: "The court erred in giving and reading to the jury defendant's instruction in the nature of a demurrer to the evidence directing the jury that under the law and the evidence its verdict should be in favor of the defendant."

Plaintiff and defendant seem to agree that the sole question to be determined is whether or not plaintiff was guilty of such negligence as to bar a recovery by her. The trial court in sustaining the demurrer to the evidence acted upon the theory that the plaintiff was guilty of such contributory negligence. Following the well settled rule in passing on the demurrer, plaintiff's evidence and all favorable inferences that may be legally drawn therefrom must be view in the light most favorable to plaintiff; and defendant's evidence, unless favorable to plaintiff, must be rejected, and where reasonable minds differ as to whether or not a person is guilty of contributory neg-

ligence, the issue must be submitted to the jury for its determination. [Nickelson v. Cowan, 9 S. W. (2d) 534; Rose v. Missouri District Telegraph Co., 328 Mo. 1009, 43 S. W. (2d) 562.]

In determining this issue the test to be applied, or "the standard by which negligence is measured and ascertained is the conduct of an ordinarily prudent man situated in like circumstances. [Amer. Brew. Assn. v. Talbot, 141 Mo. 674-685, 42 S. W. 679; 64 Am. St. Rep. 538; Loehring v. Westlake Const. Co., 118 Mo. App. 163, 180; 94 S. W. 747.] And a party may be charged with negligence if his conduct falls short of that which would be ascribed to an ordinarily prudent man in a like situation. However, this may be, the doctrine is firmly established in this State to the effect that, before a court is authorized to declare negligence as a matter of law to the extent of precluding a right of recovery, the dangers attending the situation of the party must be such as to threaten imminent peril; that is, the situation assumed by him must be fraught with peril to his safety and portend calamity apart from and without the intervention of negligence on the part of the actor to threaten the injury. The dangers must be so obvious that an ordinarily prudent man would not assume the situation." [Mitchell v. Chicago & A. Ry. Co., 132 Mo. App. 143, 112 S. W. 291.]

In the case at bar, plaintiff, being the only witness as to the method of using the liquid she thought to be kerosene, her testimony stands uncontradicted. Referring to her testimony we find that in her front room she had a stove "something similar to a circulating heater" with two doors, "one near the top and a smaller one at the bottom." On the 9th day of November, 1932, she was building a fire in the heating stove and she made it with paper and chips from the yard, lighted the paper with a match, and then went into the kitchen where she stayed about five minutes. She then went back to the living room to look at the fire "and there was only a small blaze;" she went back to the kitchen and talked to her children a few minutes more and went back to see about the fire "and it was not burning very well." She was in the kitchen about five minutes and when she went back to the front room she opened the door of the stove and dashed the coal oil in it, and as she did so it exploded. "I built a fire that morning and I don't know how long I had been nursing it." After the coal oil was poured in the stove, there was an explosion, flames came out of the stove, causing plaintiff to be injured. She testified that at the time she poured the oil out of the can into the stove she did not see any fire, but her testimony shows that she did not look to see if there was fire in the stove, although at least fifteen minutes had elapsed since she started the fire, and five minutes before she used the oil "the fire was not burning very well."

While we do not find any cases from our own jurisdiction directly in point, from an examination of the authorities cited by plaintiff and defendant, as well as other cases contained in the books, it seems that the law is reasonably well settled that it is not contributory negligence *per se* to use kerosene in kindling a new fire. However, it is equally well settled that if in kindling a new fire the fuel is first ignited and the kerosene then applied by pouring it from the can, or if used in an attempt to replenish a dying fire by pouring the kerosene thereon from the can, such acts constitute negligence as a matter of law.

In the case of Goode v. Pierce Oil Corporation, 286 S. W. 1009 (Ark.), in the course of its opinion, the court said:

"It is a matter of common knowledge that refined kerosene is used to furnish light and as fuel for oil stoves. It is also commonly used in kindling fires. Hence, in the absence of contributory negligence by the plaintiff, the evidence for the plaintiff was sufficient to allow a recovery by her. [11 R. C. L. 671 and 672, and cases cited; 25 C. J. 202, and cases cited.] . . .

"The decided cases and authorities above cited hold that it is not negligence, as a matter of law, to use kerosene in kindling a new fire. The reason is that, in such a case, there is no possibility of causing an explosion by pouring kerosene on the wood. The wood is not ignited until after the person has ceased to pour the kerosene on it. . . .

"The case is quite different when the oil is being poured from the can onto live coals, or even a small flame. As we have already seen, the pouring of the kerosene onto the small flame might extinguish it, and thereby cause the coal oil which came in contact with the burning wood to explode. In such a case, the better reasoning is to hold that the party using the kerosene is guilty of such contributory negligence as to bar him from recovery. [Morrison v. Lee, 16 N. D. 377, 113 N. W. 1025, 13 L. R. A. (N. S.) 650; Du Bois v. Luthmers, 147 Iowa, 315, 126 N. W. 147; Riggs v. Standard Oil Co. (C. C.), 130 F. 199; McLawson v. Paragon Refining Co., 198 Mich. 222, 164 N. W. 668.]"

In the case of Riggs v. Standard Oil Co., *supra*, the court said:

"'Now, there has been testimony introduced from witnesses on the part of the defendant, or from the cross-examination of defendant's witnesses, that it is customary with some men to make fires with the use of kerosene by pouring it upon kindling to light the fires. It is very possible that this may be done with entire safety if there are no coals of fire in the stove; by putting the wood and kindling in the stove and pouring oil upon it, putting the oil can away, and then applying a match to it. It is very probable that there will be no explosion under such circumstances; or, if there be a flash, then

there will be no can near to explode. But, if there is fire in the stove, it seems to me that this case demonstrates the fact that there is great probability of an explosion; and that the nature of petroleum oils of all kinds, including that of kerosene, is well know to be such, as a matter of common knowledge, that it is very dangerous to use them where they may come in contact with fire, and that when they come in contact with fire an explosion is very liable to occur.

"It seems to me that I must hold, as a matter of law, that it is hazardous negligence to attempt to light a fire in a stove where there are either live coals or a blaze, by the use of kerosene oil even of the standard required by the statute."

The court said, in the case of McLawson v. Paragon Refining Co., *supra*: "While this court has never held that the use of kerosene for lighting fires is not negligence *per se*, it is equally true that it never has held the contrary. The examination of the jurors who sat in this case and the testimony of several witnesses tends to show that this practice, whether extra hazardous or not, is one which is extremely common, if not well-nigh universal in the vicinity where the accident occurred. We are inclined to the view that it should not be held that the simple act of using kerosene for the starting of a new fire should preclude the user thereof from recovering upon the ground that he was guilty of contributory negligence as a matter of law. A different question, however, is presented when the evidential facts are considered. If plaintiff's decendent attempted to relight a dying fire or to kindle a new one without first assuring himself there was no fire in the stove, by pouring kerosene directly from the can, this act, in our opinion, would plainly be negligence *per se*."

In the case of Crouch v. Noland, 38 S. W. (2d) 471 (Ky.), the court said: "The appellee voluntarily selected an unsafe way in which to do her work on this occasion, and that act was the proximate cause of her injury. She is therefore precluded from recovering damages from her employer. [Louisville Water Company v. Darnell, 189 Ky. 771, 225 S. W. 1057; Kentucky Distilleries & Warehouse Company v. Johnson, 193 Ky. 669, 237 S. W. 3.] It is the general rule that where one exposes himself to a danger so obvious that a person of ordinary prudence, under the circumstances and with like knowledge, would not have subjected himself to it, he is guilty of contributory negligence which will preclude a recovery of damages. [Louisville Gas & Electric Company v. Beaucond, 188 Ky. 725, 224 S. W. 179.] It is generally held that the simple act of using kerosene for the starting of a new fire is not contributory negligence *per se*. But it is held to be negligence *per se* to pour kerosene upon the fire for the purpose of replenishing it."

Plaintiff takes the position that even though the trial court could take judicial notice that the use of ordinary kerosene in the manner

in which plaintiff used it was dangerous, it was not justified in sustaining the demurrer in the face of the testimony of plaintiff's expert witness, one B. A. St. John. To this contention, we think, there is no merit. It is common knowledge that ordinary kerosene when used in the manner testified to by plaintiff is dangerous. Such fact is one upon which reasonable minds do not differ, and cannot properly be controverted by so-called expert testimony. In the case of Morrison v. Lee, *supra,* the court, in speaking upon the question of expert testimony, said:

"This testimony was entitled to no probative weight as establishing that defendant's negligent act was the sole proximate cause of plaintiff's injury. . . . The most that can be claimed is that the negligence of defendant concurred with that of plaintiff in causing the injury. Without the negligence of both parties, the accident might not have happened. . . . The testimony of the experts, therefore, furnishes no light upon the vital question, which is as to whether, under the undisputed facts, plaintiff acted as a reasonably prudent person would be expected to act under the like circumstances. This question should be determined, not from the standpoint of an expert possessing scientific knowledge, but rather from the common knowledge and experience of men."

Continuing, the court said: "Applying the well-established rule that, where there is no substantial conflict in the testimony and reasonable and fair-minded men cannot differ as to the inference to be drawn from such testimony, it becomes a question of law for the court, it seems plain but that one conclusion can be reached, and that is that plaintiff did not act with such care as a reasonably prudent person would exercise under the like circumstances, but, on the contrary, his conduct was grossly careless and extremely reckless as compared with that of a reasonably careful and prudent person."

We have carefully reviewed the authorities submitted by plaintiff, and as we read them, find only two cases, the case of Dronette v. Meaux Bros., 100 So. 411 (La.), and the case of Standard Oil Co. v. Reagan, 84 S. E. 69 (Ga.), which uphold her theory in the instant case, and they are out of harmony with the almost universal ruling of other jurisdictions.

Although plaintiff has our sympathy, and we regret the unfortunate results of the accident, we are inevitably driven to the conclusion that the acts of plaintiff as detailed in her own testimony constitute contributory negligence as a matter of law. The action of the trial court in sustaining the demurrer to plaintiff's evidence is therefore affirmed. *Allen, P. J.,* and *Smith, J.,* concur.